**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
                            :

In the Matter of               :

RICHARD P. LIEBOWITZ,       :          M-2-238
                            :         **ORDER**

             Respondent.   :
-----------------------------------------------------X

**BEFORE THE COMMITTEE ON GRIEVANCES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK[1]**

      This matter comes before the Committee on Grievances for the United States District Court for the Southern District of New York (the "Committee") to consider the imposition of discipline upon Respondent Richard P. Liebowitz for misconduct in connection with cases in this Court. On April 22, 2021, the Committee issued its Order to Show Cause and Amended Statement of Charges (the "Charges") against Respondent. Prior to the issuance of the Charges, Respondent was suspended on an interim basis from practice before this Court pursuant to an Order dated November 25, 2020, and an Amended Order dated November 30, 2020, pending the outcome of the proceedings.

      The Charges allege that Respondent violated Rules 3.3(a)(1), 3.4(c), 8.4(c), 8.4(d) and 8.4(h) of the New York Rules of Professional Conduct. On or about December 28, 2021, Respondent submitted a declaration in which he admits to

---

[1] The members of the Committee are District Judge Katherine Polk Failla, Chair; Chief Judge Laura Taylor Swain; District Judges P. Kevin Castel, John P. Cronan, Colleen McMahon, Edgardo Ramos, Louis L. Stanton, and Mary Kay Vyskocil; and Magistrate Judges Stewart D. Aaron, James L. Cott, and Judith C. McCarthy.

the Charges and the corresponding violations of the Rules. Accordingly, the
Committee sustains the Charges.

## BACKGROUND

Respondent is the founder and former principal of Liebowitz Law Firm,
PLLC (the "Firm"). Since the time he founded his law firm, in or about 2015,
Respondent engaged in high-volume litigation practice, primarily representing
photographers for copyright infringement of their photographs on a contingency
basis. At the start of these proceedings, Respondent had initiated approximately
2,500 federal cases. In this district, Respondent engaged in a pattern and
practice of failing to comply with court orders and making false statements to
the Court.

### A.    *Sands v. Bauer Media Group USA*, 17-cv-9215 (LAK)

Respondent represented the plaintiff, Steve Sands, in a copyright
infringement lawsuit captioned *Sands v. Bauer Media Group USA*, 17-cv-9215
(LAK). On October 29, 2019, Plaintiff moved to recuse the Honorable
Lewis A. Kaplan, United States District Judge, arguing that Judge Kaplan's
actions in the case demonstrated personal bias against Respondent, and that
the alleged bias against Respondent resulted in actual bias against plaintiff
Sands. *Sands* ECF Nos. 68, 69, 70.

In his Declaration in support of the motion for recusal, Respondent stated
under penalty of perjury that "[p]laintiff did not make a settlement demand in
this action and was and is prepared at all times to litigate this case to final
judgment on the merits." *Sands* ECF No. 70, at ¶ 3. Respondent stated similarly

2

in the Memorandum in support of the motion for recusal that he "never made a settlement demand in this proceeding; he only ever sought judgment on the merits against Bauer Media." *Sands* ECF No. 69, at 9 n.1.

These statements were false and misleading, and Respondent knew that they were false and misleading when he made them. At the outset of the case approximately 2 years earlier, Respondent sent Defendant's counsel an email, in which Respondent himself proposed settling the matter for $25,000. *Sands* ECF No. 71, at 2. Respondent's associate also made a $25,000 settlement demand at the initial conference in the case, a conference that Respondent did not attend. *See Sands* ECF No. 78, at 4.

**B.    *Wisser v. Vox Media, Inc., 19-cv-1445 (LGS)***

Respondent was counsel to plaintiff Bill Wisser in a copyright infringement lawsuit captioned *Wisser v. Vox Media, Inc.*, 19-cv-1445 (LGS). On June 7, 2019, Liebowitz Law Firm served responses to Defendant's interrogatories ("Interrogatory Responses"). *See Wisser* ECF No. 62, at 2. Respondent certified the Interrogatory Responses. *See id.*

The Interrogatory Responses included a document titled "Plaintiff's Verification of his Answers and Objections to Defendant's First Set of Interrogatories" (the "Verification"), which includes the following statement:

> Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiff Bill Wisser ("Wisser") being duly sworn, deposes and says that I am the plaintiff in the action, that I have read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories, dated June 7, 2019, and know the contents thereof, and

3

the same are true and accurate to the best of my
knowledge, information and belief.

*Id.* Liebowitz Law Firm affixed to the Verification an electronic signature that

purported to be that of Plaintiff Bill Wisser. *See id.*

The Verification was false and misleading, and Respondent knew that it

was false and misleading when it was served. Plaintiff did not see the

Interrogatory Responses and Verification before they were served; the signature

on the Verification did not belong to Plaintiff; and Plaintiff did not give explicit

permission to anyone at Liebowitz Law Firm to sign the Verification before it was

served. *See id.* at 2-3.

On April 1, 2020, the Honorable Lorna G. Schofield, United States District

Judge, ordered Respondent and his law firm to pay the reasonable attorneys' fees

incurred by Defendant because of Respondent's failure to comply with the

Court's Scheduling Order, and to pay an additional $5,000 to the Clerk of the

Court for knowingly creating a "misleading" Verification by affixing the electronic

signature of Plaintiff on the Verification without consulting Plaintiff. *Wisser* ECF

No. 62, at 18.

**C.   *Berger v. Imagina Consulting, Inc.*, 18-cv-8956 (CS)**

Respondent represented the plaintiff, Jason Berger, in a copyright

infringement lawsuit captioned *Berger v. Imagina Consulting, Inc.,* 18-cv-8956

(CS). On April 5, 2019, Defendant filed a letter with the Court requesting a

discovery conference. *Berger* ECF No. 27. The Honorable Cathy Seibel, United

States District Judge, granted Defendant's request and scheduled a discovery

conference for April 12, 2019, at 11:00 a.m. *Berger* ECF No. 28. Judge Seibel

4

also ordered Plaintiff to respond to Defendant's letter by April 9, 2019, *id.*, which Plaintiff did. *Berger* ECF No. 30.

On April 12, 2019, Judge Seibel held the discovery conference, but Respondent did not appear, and did not call or email the Court or Defendant's counsel to explain his absence. Nor did he send anyone from his firm to cover for him. *Berger* Minute Entry dated Apr. 12, 2019; *Berger* ECF No. 61, at 3. Judge Seibel ordered Plaintiff to show cause in writing, on or before April 17, 2019, why he failed to appear for the conference and why he should not be required to pay Defendant's attorney's fees for the time expended to appear at the conference. *Berger* ECF No. 31. Judge Seibel rescheduled the conference for April 18, 2019. *Id.*

By letter to Judge Seibel dated April 15, 2019, Respondent stated that he had missed the conference because of "a death in the family," which was an "unexpected urgent matter" to which he had to attend. *Berger* ECF No. 32. He also said he would be out of the office on April 18 and asked to appear by phone at the rescheduled discovery conference. *Id.*

The conference was held by phone on April 18, 2019. *See Berger* Minute Entry dated Apr. 18, 2019. At the April 18 conference, Respondent represented that the death in his family occurred on the morning of April 12 and apologized for not letting counsel and the Court know. *Berger* ECF No. 60, at 2. This statement was false and misleading, and Respondent knew it was false and misleading when he made it. Respondent's grandfather had recently passed away—on April 9, not April 12. *Berger* ECF No. 61, at 3.

5

Judge Seibel directed that, among other things, by May 1, 2019, Respondent

provide evidence or documentation regarding the decedent, the date of death,

and the manner in which Respondent was notified of the death. *Id.* By letter

dated May 1, 2019, Respondent repeated the false representation that his

grandfather had unexpectedly died on April 12, 2019, and that he was needed to

assist with certain customs for which arrangements had to be made in advance

of the Sabbath. *Berger* ECF No. 36. Judge Seibel endorsed the letter as follows:

> This letter is not responsive to my instruction.
> Mr. Liebowitz was to *document* who passed away, when
> the person passed away and when Mr. Liebowitz was
> notified. The reason I requested documentation is that
> there is reason to believe Mr. Liebowitz is not being
> candid. So a letter from him does not advance the ball.
> When someone dies, there is documentation including a
> death certificate and (almost always) an obituary, and
> nowadays one's phone usually contains evidence of what
> one was told and when. Mr. Liebowitz may have until
> 5/3/19 to supplement this letter.

*Berger* ECF No. 38 (emphasis in original).

On May 3, 2019, Respondent filed a notice of settlement. *Berger* ECF No.

41. On May 7, 2019, Judge Seibel advised as follows:

> I'm glad the parties have resolved the case (and, I
> presume, the issue of Plaintiff's counsel's expenses for the
> April 12 conference), but there remains one open issue:
> Mr. Liebowitz's failure to document the death in the family
> that he says caused him to miss the conference. (See Doc.
> 38.) Respondent was supposed to address that issue by
> May 3, but I will give him until May 9. Even if Defendant
> has been made whole, I still need to satisfy myself that
> there is no need for disciplinary or other inquiry.

*Berger* ECF No. 45.

On May 9, 2019, Respondent filed a Declaration in which he "re-certif[ied]"

that the statements in his April 15 and May 1 letters were true, and he stated

6

that he believed that his Declaration discharged his obligation to the Court. *Berger* ECF No. 46, at ¶¶ 6-7. On May 13, 2019, Judge Seibel responded that Respondent's May 9 Declaration did not resolve the matter because, given the issues surrounding Respondent's credibility and his failure to provide any information or documentation regarding his grandfather's death, Respondent's reiteration could not sufficiently discharge his obligations to the Court. *Berger* ECF No. 47. Judge Seibel ordered Respondent to show cause why he should not be referred to the Court's Grievance Committee, and to include in his response documentation or other evidence (apart from his own word) that demonstrated that a death in the family had occurred that prevented him both from attending the April 12 conference and from timely notifying the Court and Defendant's counsel of his inability to attend. *Id.* at 3-4.

Rather than comply with the Court's order to provide the required documentation, on May 16, 2019, Respondent again submitted a Declaration reiterating his belief that his statements contained in the April 15, May 1, and May 9 letters discharged his obligations in response to the Court's order to show cause. *Berger* ECF No. 48, at ¶ 3. On July 26, 2019, Judge Seibel ordered Respondent, under pain of contempt, to provide a copy of his grandfather's death certificate to support his claim that he could not attend the April 12 conference, nor provide timely notice to the Court or opposing counsel, as a result of his grandfather's death. *Berger* ECF No. 49. In response, Respondent submitted another Declaration on August 12, 2019, stating that he believed that his previous letters sufficed to fulfill his obligations to the Court, and that he should

not be required to submit his grandfather's death certificate because it is "a personal matter." *Berger* ECF No. 50, at ¶¶ 3-4.

On August 19, 2019, in response to Respondent's August 12 letter, Judge Seibel acknowledged that while the death of a family member is certainly a personal matter, questions regarding Respondent's candor before the Court are professional in nature. *Berger* ECF No. 51. Judge Seibel offered that if Respondent was concerned about the death certificate being available on the public docket, he was welcome to provide the document directly to Judge Seibel's chambers to ensure his privacy. *Id.* Judge Seibel also made clear that, should Respondent fail to provide the requested documentation by August 26, he would be held in contempt of court and subject to sanctions, including monetary sanctions and/or referral to this Court's Grievance Committee. *Id.*

On August 26, 2019, the day Respondent was required to provide his grandfather's death certificate pursuant to Judge Seibel's August 19 order, Respondent instead submitted another Declaration. *Berger* ECF No. 52. In this Declaration, Respondent argued that he was not in contempt because Judge Seibel's request for his grandfather's death certificate was unlawful, as it "likely constitutes a usurpation of judicial authority or a breach of judicial decorum," *id.* ¶ 14; his previous Declarations complied with Judge Seibel's previous orders, *id.* ¶ 15; "there [was] no basis to impose monetary sanctions," *id.* ¶ 16; and Judge Seibel's assurance that Respondent's grandfather's death certificate would not be made public was insufficient to protect Respondent's right to privacy, *id.* ¶ 17.

8

On September 27, 2019, Judge Seibel endorsed Respondent's latest

Declaration, stating that:

> There is nothing unlawful about my August 19, 2019
> order. There was also nothing unclear about it. Likewise,
> Mr. Liebowitz's failure to comply is apparent beyond any
> reasonable doubt. Finally, he has not diligently attempted
> to comply. To the contrary, while maintaining that the
> death occurred (and thus implicitly conceding the
> existence of a death certificate), he has repeatedly refused
> to provide it, even after the Court made clear that his
> "good faith declarations" were insufficient and after the
> Court agreed that the document need not be publicly
> filed. He has not shown or even alleged an inability to
> comply.

*Berger* ECF No. 53. Judge Seibel therefore declared Respondent to be in

contempt of court and ordered that, should Respondent fail to comply with the

order and provide the requested documentation by October 2, Respondent would

be subject to monetary sanctions of $100 each business day until he complied.

*Id.* Judge Seibel also informed Respondent that, "[s]hould this sanction prove

insufficient" to ensure Respondent's compliance, "additional or different

sanctions [would] be considered." *Id.*

On October 2, 2019, Respondent wrote a letter to Judge Seibel's chambers

requesting an in-person conference to discuss the September 27 order, and

requesting a stay of that order "[f]or just cause" until the conference could be

held. *Berger* ECF No. 54. Judge Seibel denied Respondent's request, noting that

Respondent's letter had not stated what purpose would be served by an in-

person conference, nor had he supplied any justification for a stay of the

September 27 order. *Berger* ECF No. 55.

9

Respondent submitted another letter the next day, October 3, 2019, reiterating his request for an in-person conference to discuss his grandfather's death certificate and for a stay "[f]or just cause." *Berger* ECF No. 56. Judge Seibel again denied the October 3 application, because Respondent had not articulated any purpose that the conference would serve, nor did he supply any cause to stay the September 27 order. *Berger* ECF No. 57. Judge Seibel further ordered Respondent to refrain from filing any further requests for a conference unless he could explain specifically what purpose would be served by the conference and to refrain from filing any further requests for a stay of the September 27 order unless he could specifically state a justification for a stay. *Id.* Judge Seibel notified Respondent that his first payment under the contempt sanction was due to the Clerk of Court on Monday, October 7, 2019. *Id.*

On October 7, 2019, Respondent sent a letter to Judge Seibel requesting a two-week extension to deliver his grandfather's death certificate and requesting that the monetary sanctions be stayed until after the extension had elapsed. *Berger* ECF No. 58. The request came at 8:34 p.m., well after the Clerk's Office had closed. *Berger* ECF No. 59. Judge Seibel denied Respondent's request for an extension. *Id.*

As of November 1, 2019, Respondent had not made any of his required payments and was therefore in contempt of the August 19, 2019 and September 27, 2019 orders. *Berger* ECF No. 60. Judge Seibel therefore increased the daily contempt sanction to $500 a day, effective November 6, 2019, until Respondent complied, in full, with the August 19, 2019 and September 27, 2019 Orders.

Judge Seibel also ordered Respondent to appear before her in person on November 13, 2019, and to show cause why he should not be incarcerated until such time as he complied with the orders. *Id.*

On November 7, 2019, Respondent retained Richard A. Greenberg as counsel to represent Respondent in the contempt proceedings. *Berger* ECF No. 61, at 4. On November 11, 2019, Respondent sent a letter to Judge Seibel, admitting that he "failed to carry out his responsibilities to the Court and adversary counsel." *Berger* ECF No. 61, at 2. Respondent further admitted that his grandfather had died on April 9, 2019, and that he was buried on the same day. *Id.* Attached to the November 11 Letter was the death certificate confirming his grandfather's death on April 9. *Id.* at Ex. C.

Respondent blames his "lapse" on the death of his grandfather, which, he claims, "produced a brief period of overwhelming grief and dysfunction." *Berger* ECF No. 61, at 2. Respondent requested that Judge Seibel vacate the two contempt orders, declare Respondent's financial penalties satisfied, and permit Respondent to continue to practice before the Court. *Id.* at 1.

The order to show cause hearing was held on November 13, 2019. Judge Seibel declined to vacate the findings of contempt based on Respondent's failure to produce the death certificate and failure to pay contempt sanctions, finding that Respondent had willfully lied to the Court and willfully failed to comply with lawful court orders. *Berger* Minute Entry dated Nov. 13, 2019. Judge Seibel found Respondent no longer in contempt based on his production of the death

11

certificate through counsel, and his payment of $3,700 in sanctions. She also referred Respondent to the Grievance Committee. *Id.*

**D.** **_Steeger v. JMS Cleaning Servs., LLC, 17-cv-8013 (DLC)_**

Respondent represented the plaintiff, Paul Steeger, in a copyright infringement lawsuit captioned *Steeger v. JMS Cleaning* Servs., LLC, 17-cv-8013 (DLC). On January 13, 2018, Respondent submitted a letter to the Court on behalf of Plaintiff requesting an adjournment of the Initial Pretrial Conference scheduled for January 19, 2018, stating that Defendant "had yet to respond to the complaint" and that Plaintiff intended to file a motion for a default judgment. *Steeger* ECF No. 9.

The Honorable Denise L. Cote, United States District Judge, granted this request, ordering the motion for entry of default due on January 26, 2018. *Steeger* ECF No. 10. Respondent's statement in his January 13 letter that Defendant "had yet to respond to the complaint was false and misleading, and Respondent knew that it was false and misleading when he made it. Respondent's January 13 letter failed to advise the Court of a months-long history of communication between the parties, beginning in July 2017:

- In late July 2017, Respondent's law firm mailed a draft complaint and demand letter to a P.O. Box for a principal of Defendant. *Steeger* ECF No. 11, at 1; ECF No. 15, at 2.
- Shortly thereafter, an attorney for Defendant contacted Respondent regarding the complaint. That attorney made a settlement offer and advised Respondent that the photograph at issue had been removed from Defendant's website. *Steeger* ECF No. 11, at 1.
- Respondent represented that he would present the settlement offer to Plaintiff for his consideration, but Respondent never indicated that he did so and never

12

responded to the offer. Instead, on October 18, 2017, Respondent filed an action on behalf of Plaintiff against Defendant. *Id.*

- On November 8, 2017, Defendant hired new counsel in connection with the complaint. That same day, Defendant's counsel spoke with Respondent by telephone and offered to settle the case. Defendant's counsel also advised Respondent that Defendant had not yet been served with the complaint. Respondent promised to respond to this settlement offer, but he never did. *Id.*

On November 9, 2017, Judge Cote issued a Notice of Pretrial Conference, which directed Plaintiff to "(i) notify all attorneys in this action by serving upon each of them a copy of this notice and the court's individual practices forthwith, and (ii) to file proof of such notice with the Court." *Steeger* ECF No. 7. The Notice also instructed counsel that, if they were "unaware of the identity of counsel for any of the parties [they] must forthwith send a copy of the notice and practices to that party personally." *Id.*

On December 12, 2017, Respondent served the complaint on Defendant through the Secretary of State. *Steeger* ECF No. 8. Defendant never received the Complaint because the Secretary of State did not have the correct address for service on file. *Steeger* ECF No. 11, at 2. Respondent never served the Notice of Pretrial Conference on Defendant or Defendant's counsel. *Id.* On January 12, 2018, Defendant's counsel discovered through the Electronic Case Filing System that Respondent had filed the complaint through the Secretary of State a month prior, and that the Pretrial Conference had been scheduled for January 19, 2018. *Id.* Defendant appeared for the January 19 Conference. Respondent had not informed Defendant that the Pretrial Conference had been adjourned, or that Plaintiff intended to file a motion for default judgment. *Id*; ECF No. 13, at 3.

13

On January 26, 2019, Judge Cote ordered Respondent to show cause why he should not be sanctioned for: (1) his failure to serve the November 9, 2017 Notice of Pretrial Conference; (2) the misrepresentations and omissions in his January 13, 2018 letter to the Court; and (3) costs the Defendant needlessly incurred. *Steeger* ECF No. 13, at 4. On February 2, 2018, Respondent filed a response claiming that his failure to serve the Court's Notice of Pretrial Conference on Defendant was "inadvertent," and argued that his January 13 letter did not contain any misrepresentations, and that he was not required by law to include any additional information. *Steeger* ECF No. 20, at 3. Respondent also argued that it was in fact the Defendant who needlessly made the litigation more expensive. *Id.*

On February 28, 2018, Judge Cote imposed a monetary sanction in the amount of $10,000 on Respondent for his "failure to serve the Notice of Pretrial Conference, his material omissions in his January 13 letter" — which "misled the Court as to the defendant's participation in the litigation" — "and his needless infliction of costs on the defendant." *Steeger* ECF No. 22, at 6.

On March 15, 2018, Judge Cote reduced the original monetary sanction of $10,000 to $2,000 and ordered Respondent to complete four hours of ethics CLE training. *Steeger* ECF No. 27, at 8. Judge Cote explained that the Court took the "opportunity to craft sanctions that [would] more directly address the deficiencies in performance described above and deter their repetition." *Id.* In making this determination, Judge Cote noted that "it [was] troubling that the motion for

14

reconsideration [continued] the pattern of omissions and misrepresentations that [had] plagued Mr. Liebowitz's earlier submissions in this action." *Id.* at 6.

**E.    *Romanowicz v. Alister & Paine, Inc.,* 17-cv-8937 (KHP)**

Respondent represented the plaintiff, Andrew Romanowicz, in a copyright infringement lawsuit captioned *Romanowicz v. Alister & Paine, Inc.,* 17-cv-8937 (KHP). On April 26, 2018, the Honorable Katharine H. Parker, United States Magistrate Judge, ordered Plaintiff to serve and file an inquest memorandum, and scheduled an inquest hearing for June 19, 2018. *Romanowicz* ECF No. 19. Magistrate Judge Parker also directed Respondent to: (1) serve a copy of the Default Judgment issued by the Honorable Paul A. Engelmayer, United States District Judge, along with a copy of the April 26 Order, to Defendant; (2) file an affidavit of service of the Default Judgment and its Order with the Court; and (3) serve a copy of all papers filed in connection with the damages inquest on Defendant by May 25, 2019, and to file an affidavit of service with the Court. *Id.*

Respondent failed to attend the hearing as ordered and failed to request an adjournment. *Romanowicz* ECF No. 24. Respondent also did not file any affidavits of service. Further, only when Magistrate Judge Parker inquired as to Respondent's whereabouts when he failed to appear for the June 19, 2018, hearing did Respondent request an extension of time to serve the Default Judgment, the Order, and the damages papers. *Id.* On June 22, 2018, Magistrate Judge Parker fined Respondent $200 for his failure to comply with the Court's Order. *Id.*

**F.**   *Seidman v. GAX Productions, LLC, 18-cv-2048 (BCM)*

Respondent represented the plaintiff, Helayne Seidman, in a copyright

infringement lawsuit captioned *Seidman v. GAX Productions, LLC*, 18-cv-2048

(BCM). On July 3, 2018, Defendant served on Plaintiff its First Set of

Interrogatories and its First Request for Production of Documents. *Seidman* ECF

No. 19. On August 2, 2018, Respondent, on behalf of Plaintiff, provided

Defendant with an incomplete Response to Interrogatories. The document was

signed by Respondent, but not by Plaintiff. *Id.* No documents were produced. *Id.*

On August 9, 2019, Defendant sent a Deficiency Letter to Plaintiff

identifying the deficiencies in Plaintiff's responses to the discovery requests. *Id.*

After the parties held a meet-and-confer, Respondent, on behalf of Plaintiff,

provided an Amended Response to Defendant, which did not address the

majority of the deficiencies that Defendant had identified. Notably, the Response

to Interrogatories remained unsigned by Plaintiff. *Id.* Respondent, on behalf of

Plaintiff, simultaneously produced only two documents to Defendant: an article

relating to the "Jamaican patty king," and a 2010 contract between Plaintiff and

the New York Post. *Id.*

On August 27, 2018, Defendant filed a letter-motion requesting an order

compelling Plaintiff to: (1) answer all of its interrogatories and to sign the

interrogatory answers; and (2) produce additional documents responsive to its

document production requests. *Id.* On August 28, 2018, the Honorable Barbara

Moses, United States Magistrate Judge, issued an order advising Plaintiff that:

> [U]nder Fed. R. Civ. P. 33(b), interrogatory responses
> must be signed, under oath, by the party "who makes the

> answers." Where the party is an individual, the signature
> of her counsel will not suffice. See, e.g., Trueman v. New
> York State Canal Corp., 2010 WL 681341, at *5 (N.D.N.Y.
> Feb. 24, 2010) (quoting Roth v. Bank of Commonwealth,
> 1988 WL 43963, at *2 (W.D.N.Y. May 4, 1988)) ("Unsigned
> and unverified answers are not answers . . . and answers
> which are signed by the party's attorney and not made
> under oath by the party do not comply with Rule 33.");
> see also Joint Stock Co. Channel One Russia Worldwide
> v. Infomir LLC, 2017 WL 825482, at *2, n.2 (S.D.N.Y.
> Mar. 2, 2017) (Moses, M.J.) (corporate defendant failed to
> comply with Fed. R. Civ. P. 33 where the officer who
> answered the interrogatories on its behalf did not
> personally sign them).

*Seidman* ECF, No. 20, at 1.

Regarding the document production requests, Magistrate Judge Moses

reminded Plaintiff that:

> [P]ursuant to Fed. R. Civ. P. 34(b)(2)(B), objections must
> be stated "with specificity." The "with specificity"
> language, added by the 2015 amendments to the Federal
> Rules, means that "[g]eneral objections should rarely be
> used after December 1, 2015 unless each such objection
> applies to each document request (e.g., objecting to
> produce privileged material)." *Fischer v. Forrest*, 2017 WL
> 773694, at *3 (S.D.N.Y Feb. 28, 2017).    Moreover,
> "responses . . . stating that the requests are 'overly broad
> and unduly burdensome' is meaningless boilerplate. Why
> is it burdensome? How is it overly broad? This language
> tells the Court nothing." *Id.* Plaintiff is further reminded
> that, pursuant to Rule 34(b)(2)(C), "[a]n objection must
> state whether any responsive materials are being
> withheld on the basis of that objection."

*Id.* at 2.

Magistrate Judge Moses gave Plaintiff leave to respond to Defendant's

August 25 letter-motion on or before September 4, 2018, or to serve "amended

responses in compliance with the Federal Rules of Civil Procedure." *Id.*

Respondent did not serve any amended or revised discovery responses on behalf

of Plaintiff. Instead, Respondent filed a letter on September 5, 2018 (dated

September 4), asserting that the responses before the Court were "sufficient and

[did not] warrant any motion to compel." *Seidman* ECF, No. 21. Respondent

further stated that Plaintiff had "produced everything she [had] in response to

Defendants' [sic] requests." *Id.*

On September 6, 2018, Magistrate Judge Moses ordered Respondent to

pay Defendant's reasonable expenses, including attorney's fees, incurred in

making the letter-application to the Court after Respondent failed to provide

adequate discovery responses, stating:

> Respondent made "no showing that he was unable to
> secure the signature of his client on her interrogatory
> answers. To the contrary: after being reminded of the
> signature requirement by this Court he nonetheless told
> defendant, and now tells this Court, that plaintiffs
> previously-served unsigned answers are 'sufficient,'
> which is meritless as a matter of law."

*Seidman* ECF No. 23, at 2. On October 5, 2018, Magistrate Judge Moses ordered

Respondent to pay $650 to Defendant in connection with the September 6, 2018,

order. *Seidman* ECF No. 37, at 2.

### G.   *Chicoineau v. Bonnier Corp., 18-cv-3264 (JSR)*

Respondent represented the plaintiff, Pierre Yves Chicoineau, in a

copyright infringement lawsuit captioned *Chicoineau v. Bonnier Corp.*, 18-cv-

3264 (JSR). Pursuant to a Joint Civil Case Management Plan entered on

May 2, 2018, the parties were scheduled to attend a final pretrial conference on

October 5, 2018. *Chicoineau* ECF No. 12.

Respondent failed to attend the October 5, 2018 conference, and blamed his absence on a calendaring error. *Chicoineau* ECF No. 29. The Honorable Jed S. Rakoff, United States District Court Judge, ordered Respondent to pay $500 to Defendant's counsel as compensation for his time attending the hearing that Respondent failed to attend. *Id.*

**H.    *Craig v. UMG Recordings, Inc., 16-cv-5439 (JPO)***

Respondent represented the plaintiff, Glen Craig, in a copyright infringement lawsuit captioned *Craig v. UMG Recordings, Inc.*, 16-cv-5439 (JPO). On December 1, 2017, Respondent filed a motion on behalf of Plaintiff to disqualify Defendants' proposed expert witness, Professor Jeffrey Sedlik ("Sedlik"), based on a claim that Plaintiff had previously disclosed confidential information to Sedlik. *Craig* ECF No. 56, at 1-2. In order to have Sedlik disqualified, Plaintiff had to show at a minimum that: (1) it was objectively reasonable for him to believe that he had a confidential relationship with Sedlik; and (2) he actually disclosed confidential information to Sedlik. *Craig* ECF No. 96, at 20.

Respondent argued in his moving papers that Plaintiff had "explain[ed] the whole theory of the case to Mr. Sedlik," *Craig* ECF No. 56, at 7, and that he had also discussed "litigation" and "settlement strategy" with Sedlik. *Craig* ECF No. 64, at 6-7. These statements were false and misleading, and Respondent knew that they were false and misleading when he made them.

Plaintiff never disclosed any confidential information to Sedlik.  Instead, Plaintiff relayed only "the basic facts of the case, his career path, and his

19

licensing history"—none of which could be properly categorized as confidential. *Craig* ECF No. 96, at 20; ECF No. 73-1, 6:7–23. The Honorable J. Paul Oetken, United States District Judge therefore concluded that, "[i]n addition to the utter lack of merit to [Plaintiff's] motion to disqualify . . . the motion was made vexatiously and in bad faith." *Craig* ECF No. 96, at 21. Judge Oetken granted Defendant's motion for sanctions as to Respondent and Respondent's law firm, and denied the motion as to Plaintiff, stating:

> [w]ith the full knowledge that Craig had not disclosed any confidential information, Liebowitz went ahead and filed this meritless motion. Liebowitz's bad faith is most evident in the omission of the details of the alleged conversation in the moving papers. Those details were fatal to Craig's motion, and obviously so under a basic understanding of the applicable law.

*Craig* ECF No. 96, at 21-22.

Judge Oetken denied Respondent's motion for reconsideration and awarded Defendant $98,532.62 in attorney's fees and costs pursuant to 28 U.S.C. § 1927, stating:

> Because the Court concludes that Liebowitz could not have had any genuine belief at the time he filed his disqualification motion that Plaintiff's licensing history constituted confidential information, and because the disqualification motion was entirely colorless for the reasons detailed in the Court's prior ruling, the Court reaffirms its inference that Liebowitz acted in bad faith in filing the motion and so sustains its prior ruling.

*Craig* ECF No. 110, at 7;14.

### I.    *Dvir v. Dancing Astronaut, Inc., 18-cv-9416 (VEC)*

Respondent represented the plaintiff, Natan Dvir, in a copyright infringement lawsuit captioned *Dvir v. Dancing Astronaut, Inc.*, 18-cv-9416 (VEC).

20

On March 15, 2019, the Honorable Valerie Caproni, United States District Judge, issued an order directing Defendant to appear at a hearing on April 19, 2019, to show cause why a default judgment should not be issued against it. *Dvir* ECF No. 20. On April 19, 2019, Respondent appeared for Plaintiff at the show-cause hearing, but Defendant made no appearance. *Dvir* ECF No. 24, at ¶ 5.

At the hearing, Judge Caproni heard from Respondent regarding the appropriate amounts of statutory damages and attorneys' fees, as well as Respondent's request for $2,975.00 in attorneys' fees. *Dvir* ECF No. 24, at ¶¶ 6-7. Judge Caproni refused Respondent's request that his time be compensated at $450 per hour, which Judge Caproni found to be "an outlandish figure given that [Respondent] was admitted to the New York bar only in August 2015 and the cookie-cutter nature of this litigation." *Dvir* ECF No. 24, at ¶ 7; ECF No. 31, at 2. Judge Caproni also rejected Respondent's estimate for the number of hours it took him to perform the work related to both his preparation of the Complaint and the default judgement filed in the case, reasoning that both documents were "virtually identical" to the others he had filed in the Southern District of New York, and should not have taken him as long as he indicated. *Dvir* ECF No. 31, at 3. Judge Caproni ordered Respondent to submit a revised proposed default judgment reflecting the Court's adjustments by April 24, 2019. *Id.* Respondent never submitted a revised proposed default judgment. *Id.*

On April 29, 2019, Judge Caproni revised the Plaintiff's proposed default judgment in accordance with the Court's adjustments and filed the judgment. *Dvir* ECF No. 24. On the same day, Judge Caproni issued an order

21

directing Respondent to show cause why he should not be sanctioned under Fed.

R. Civ. P. 16(f), 28 U.S.C. § 1927, or the Court's inherent powers, for violating the

Court's order directing him to submit a revised proposed default judgment. *Dvir*

ECF No. 25. On May 5, 2019, Respondent filed a memorandum of law in

response to the Court's order, which addressed whether sanctions under Section

1927 or the Court's inherent powers were appropriate, but did not address the

appropriateness of sanctions under Rule 16(f). *Dvir* ECF No. 29.

On May 22, 2019, Judge Caproni found that Respondent "failed to

comply with [the] Court's order—communicated to him in-person, face-to-face,

by the undersigned—by failing to submit any revised proposed default judgment

at all, let alone one by the April 24, 2019 deadline." *Dvir* ECF No. 31, at 1.

Accordingly, Judge Caproni imposed a monetary sanction of $500 on

Respondent. *Id.* Judge Caproni suspended the imposition of the sanction for

eighteen months from the date of the order and noted that if Respondent "fully

and timely" complied with the Court's orders during that time, the order would

be dismissed. *Id.* at 6. However, the sanction would become "immediately

payable" upon any future violations. *Id.* On October 9, 2019, Judge Caproni

imposed the suspended $500 sanction on Respondent in connection with his

failure to comply with a Court order in *Polaris Images Corp. v. CBS Interactive,*

*Inc.,* No. 19-CV-3670 (as discussed in Section K., below). *Polaris* ECF No. 16.

###    J.    *Rice v. NBCUniversal Media, LLC, 19-cv-447 (JMF)*

Respondent represented the plaintiff, John Curtis Rice, in a copyright

infringement lawsuit captioned *Rice v. NBCUniversal Media, LLC*, 19-cv-447

(JMF). On January 17, 2019, the Honorable Jesse M. Furman, United States
District Judge, ordered that the parties appear for an initial conference on May 2,
2019, and that they conduct a mediation session prior to that initial conference.
*Rice* ECF Nos. 6, 7.

On April 1, 2019, the Court-annexed Mediation Program closed the
mediation referral, noting that "one or both parties failed, refused to attend, or
refused to participate in the mediation." *Rice* ECF No. 14. On April 25, 2019, the
parties filed a joint letter to the Court in which Defendant's counsel represented
that Defendant had "indicated that it was willing to participate in a mediation
and provided available dates to the mediation office," but that Respondent had
not indicated Plaintiff's availability. *Rice* ECF No. 16. Further, Respondent failed
to respond to the Mediation Office's scheduling emails. *Rice* ECF No. 36, at 3. As
a result, no mediation session was held and no relief from the mediation order
had been sought or granted prior to the time of the initial conference. *Id.*

On May 1, 2019, the day before the initial conference was scheduled to
take place, Respondent filed two requests with the Court. First, at 3:19 p.m.,
Respondent filed a letter motion requesting the Court change the time of the
conference from 3:45 p.m. to 10:45 a.m., which Judge Furman granted, but
warned that at the May 2 conference, "counsel should be prepared to explain the
timing and reason for the request." *Rice* ECF Nos. 18, 19. Later that day, at
11:09 p.m., Respondent filed a stipulation of voluntary dismissal signed by both
parties. *Rice* ECF No. 20. Six minutes later, Respondent filed a letter motion to
cancel the May 2 conference. *Rice* ECF No. 21. At 9:29 a.m. the next morning,

23

Judge Furman denied the request to cancel the conference, and ordered that "[c]ounsel (including Mr. Liebowitz himself) shall appear as scheduled, in part so Plaintiff's counsel can answer for his apparent failure to comply with this Court's orders and rules, including its orders regarding early mediation." *Rice* ECF No. 22.

Respondent did not appear for the May 2 conference. *Rice* ECF No. 36, at 4. When the Court's staff contacted Respondent's office to inquire about his whereabouts, it "got somewhat conflicting information about whether he was out of town or on his way." *Rice* ECF No. 34, at 2.

After Respondent's failure to appear, Judge Furman ordered Respondent to show cause in writing why sanctions should not be imposed pursuant to Rules 11 and 16 of the Federal Rules of Civil Procedure and the Court's inherent authority. *Rice* ECF No. 25. In a declaration filed with the Court on May 9, 2019, Respondent argued that: (1) sanctions should not be imposed on him for failure to mediate because Plaintiff was simply unavailable to attend the mediation; and (2) that his failure to attend the initial conference was excusable because he believed that "the Court lacked jurisdiction to conduct a Rule conference" after the parties signed the stipulation of dismissal. *Rice* ECF No. 26, at 4.

On July 10, 2019, Judge Furman imposed a monetary sanction of $8,745.50 on Respondent for attorney's fees for his failure to comply with multiple court orders and to "secure compliance with the Court's orders and counsel's professional duties in the future." *Rice* ECF No. 36, at 13-14. On August 8, 2019, Judge Furman denied Respondent's request for reconsideration.

24

### K.   *Polaris Images Corp. v. CBS Interactive, Inc.*, *19-cv-3670 (VEC)*

Respondent represented the plaintiff, Polaris Images Corporation, in a copyright infringement lawsuit captioned *Polaris Images Corp. v. CBS Interactive, Inc.*, 19-cv-3670 (VEC). On May 2, 2019, the Honorable Valerie Caproni, United States District Judge, issued an order referring the case to the Mediation Office for settlement purposes under Local Civil Rule 83.9. *Polaris* ECF No. 6. As part of the May 2 Order, Plaintiff was required "to file proof of service no more than three days after service [had] been effected" and to produce to Defendant, "by the earlier of 1)14 days after service of process or 2) three business days in advance of any mediation session," royalty and licensing information regarding the photograph at issue. *Id.*

Respondent failed to comply with both directives. *Polaris* ECF No. 16, at 2. Respondent did not file an affidavit of service until July 18, 2019, even though service was effected on April 30, 2019. *Id.* Respondent also had not produced the required royalty information to Defendant as of July 30, 2019. *Id.* On August 1, 2019, Judge Caproni ordered Respondent to show cause why 1) sanctions should not be imposed on him for failing to comply with the May 2 Order, and 2) the suspended $500 sanction in the *Dvir* case should not also be imposed. *Polaris* ECF No. 12.

In response, Respondent filed a declaration with a "perfunctory explanation" as to his failures, which Judge Caproni found "inadequate and wholly unconvincing." *Polaris* ECF No. 16, at 3. On October 9, 2019, Judge Caproni found that Respondent failed to show cause why he should not be

sanctioned, and imposed a monetary sanction of $1,000 on Respondent for his failure to comply with the May 2 Order. *Id.* at 6. Judge Caproni also ordered Respondent to immediately pay the $500 sanction that had been held in abeyance in *Dvir v. Dancing Astronaut, Inc.*, No. 18-CV-9416. *Id.*

## L.    *Rock v. Enfants Riches Deprimes, LLC, 17-cv-2618 (ALC)*

Respondent represented the plaintiff, Mick Rock, in a copyright infringement lawsuit captioned *Rock v. Enfants Riches Deprimes, LLC*, 17-cv-2618 (ALC). In the complaint, Respondent alleged on behalf of Plaintiff that Plaintiff was "the author of the Photograph" of musician Lou Reed (the "Photograph") and "ha[d] at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto." *Rock* ECF No. 1, at ¶¶ 9-10. Respondent also alleged that the Photograph was "registered with the United States Copyright Office and was given registration number VA 1-766-990." *Id* at ¶11. These allegations were false and misleading, and Respondent knew that they were false and misleading when he made them.

Respondent litigated the case based on a copyright registration certificate that he knew, or should have known, did not cover the Photograph. Plaintiff did not hold a valid registration for the Photograph. *Rock* ECF No. 71, at 1-3. The only registration referenced in the complaint was for a book that contained the photograph, but which explicitly excluded "previously published works" from its coverage (the "990 Registration"). *Id.* Indeed, Plaintiff admitted in a deposition in which he was represented by Respondent and other documents that the Photograph had been previously "published" on numerous occasions. *Id.*

In order to prevent Defendants from learning that Plaintiff did not hold a valid registration for the Photograph, Respondent stonewalled Defendants' requests for documents and information, including the certificate for the 990 Registration. *Rock* ECF No. 71, at 6. Respondent also failed to comply with an Order issued by Magistrate Judge Debra Freeman to obtain and produce Copyright Office documents regarding the 990 Registration. *Id*; ECF No. 31. After it came to light that the Photograph was not registered, Respondent argued, without evidence and despite the record stating otherwise, that the application for the 990 Registration had "mistakenly" excluded the Photograph. *Rock* ECF No. 42.

On January 29, 2020, the Honorable Andrew L. Carter Jr., United States District Court Judge, granted Defendant's motion for attorneys' fees in the amount of $100,008.13 against Plaintiff and for sanctions against Respondent and Respondent's law firm in the amount of $10,000, stating: "This conduct—of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of making meritless arguments—undoubtedly demonstrates bad faith." *Rock* ECF No. 71, at 3. On May 29, 2020, Judge Carter denied Respondent's motion for reconsideration. *Rock* ECF No. 82, at 6.

**M.    *Chevrestt v. Barstool Sports, Inc., 20-cv-1949 (VEC)***

Respondent represented the plaintiff, Angel Chevrestt, in a copyright infringement lawsuit captioned *Chevrestt v. Barstool Sports, Inc.*, 20-cv-1949 (VEC). On March 5, 2020, Judge Caproni issued an order referring the case to

the Honorable Sarah Netburn, United States Magistrate Judge, for a settlement conference. *Chevrestt* ECF No. 4.

The March 5 Order directed Respondent to "file proof of service no more than three days after service has been effected; and to produce to Defendant(s), by the earlier of 1) 14 days after service of process or 2) three business days in advance of any mediation session, copies of records sufficient to show the royalty paid the last three times the picture that is at issue in this case was licensed, as well as the number of times the picture was licensed in the last five years; if the picture at issue has never been licensed, Plaintiff must expressly certify that fact to Defendant(s) as part of Plaintiff's production." *Id.* Respondent failed to comply with both directives. *Chevrestt* ECF No. 20, at 2. Although service was effected on March 6, 2020, Respondent did not file an affidavit of service until March 31, 2020. *Id.* Respondent also did not produce the required royalty information to Defendant on time. *Id.*

On April 15, 2020, Judge Caproni ordered Respondent to show cause why he should not be sanctioned for failing to comply with the Court's March 5, 2020 Order. *Chevrestt* ECF No. 14. Respondent attributed his failure to comply with the Court's order to file proof of service to "administrative oversight"—an excuse which Judge Caproni previously found "inadequate" and "sanction-worthy." *Chevrestt* ECF, No. 17; *Chevrestt* ECF No. 20, at 5. On May 8, 2020, Judge Caproni found that Respondent "failed to provide adequate reasons for his failure to comply with the two explicit and simple directions contained in the March 5 Order," and specifically found Respondent's attempt to plead "administrative

oversight" to be "disingenuous, distasteful, unpersuasive, and likely perjurious." *Chevrestt* ECF No. 20, at 5, 10. Accordingly, Judge Caproni: (1) imposed a civil monetary sanction of $3,000 on Respondent; (2) ordered Respondent to pay Defendant's counsel in an amount equal to the fees incurred by bringing his non-compliance with the Court's Order to Judge Caproni's attention; and (3) ordered Respondent to enroll in and complete a course on managing a small law practice. *Chevrestt* ECF No. 20, at 10.

### N.   *Usherson v. Bandshell Artist Mgmt., 19-cv-6368 (JMF)*

Respondent represented the plaintiff, Arthur Usherson, in a copyright infringement lawsuit captioned *Usherson v. Bandshell Artist Mgmt.*, 19-cv-6368 (JMF). Respondent violated at least six of the Court's orders over the course of the litigation. The Honorable Jesse M. Furman, United States District Judge, outlined Respondent's violations as follows:

> On July 15, 2019, the Court ordered Mr. Usherson to "file proof of service no more than three days after service has been effected." ECF No. 6. Bandshell was served on September 5, 2019, but Mr. Liebowitz did not file proof of service until September 21, 2019, thirteen days after the Court's deadline. ECF No. 7.
>
> On July 15, 2019, the Court also ordered Mr. Usherson to produce limited discovery to Bandshell "by the earlier of 14 days after service of process or three business days in advance of any mediation session." ECF No. 6. Mr. Liebowitz failed to produce these materials (or to notify Mr. Newberg that none of the required discovery existed) by the September 19, 2019 deadline. Only when Mr. Newberg prodded him on September 20, 2019, did Mr. Liebowitz respond: "My client is still looking but as of now doesn't look like any licensing for this photo." ECF No. 16, at 12.

On July 15, 2019, the Court scheduled an initial pretrial conference and ordered that "all pretrial conferences must be attended by the attorney who will serve as principal trial counsel." ECF No. 5, at 1. In addition, the Mediation Program's rules (which were incorporated by reference into the Court's Order at ECF No. 6), required that "the lawyer who will be primarily responsible for handling the trial of the matter" attend the mediation. Mediation Rule 9(c). Mr. Liebowitz attended the initial conference but did not attend the mediation on October 31, 2019. At the evidentiary hearing, Mr. Liebowitz was evasive about whether he or [James] Freeman was trial counsel (even though Mr. Freeman never even entered a notice of appearance), but either way Mr. Liebowitz violated an Order of the Court: If he was principal trial counsel, he violated the Court's Order by failing to appear at the mediation; if he was not principal trial counsel, then he violated the Court's Order by appearing at the initial conference.

On July 15, 2019, the Court ordered that Mr. Liebowitz and Mr. Usherson participate in mediation "**no later than two weeks *before* the initial pretrial conference**," initially scheduled for October 10, 2019. ECF No. 5, at 1 (emphasis in original). Neither did, and Mr. Liebowitz did not request an extension of the mediation deadline at least forty-eight hours in advance, as required by the Court's Individual Rules. Instead, on October 4, 2019, Mr. Liebowitz filed a letter attempting (at best, disingenuously) to pin blame onto the Mediation Office for the missed deadline and requesting permission to conduct the mediation by telephone. *See* ECF No. 12.

On October 7, 2019, the Court extended the deadline to mediate, and ordered that "[t]he parties shall conduct the in-person mediation no later than October 31, 2019." ECF No. 13. Further, as discussed below, the Mediation Office's procedures required that Mr. Usherson appear at the mediation in person. Mr. Liebowitz agreed that he and Mr. Usherson would participate in a mediation session on October 31, 2019, ECF No. 16, at 27, but neither showed up. As discussed below, Mr. Liebowitz gave no notice to opposing counsel, the Mediator, or the Court that Mr. Usherson would not be attending in person.

> On November 15, 2019, the Court ordered both parties to address in their sanctions briefing "whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted." ECF No. 20, at 6. Mr. Liebowitz failed to address those issues in his brief. ECF No. 21.

*Usherson* ECF No. 68.

Further, over the course of the litigation, Respondent made repeated representations to the Court that, prior to the October 31, 2019 mediation, he had obtained permission from the mediator for Plaintiff to participate in the mediation by telephone. Respondent made these representations in open court, in multiple Court filings, including at least one declaration sworn under penalty of perjury, and in his testimony under oath at an evidentiary hearing held on January 8, 2020. *Usherson* ECF No. 68, at 29. These representations were false and misleading, and Respondent knew they were false and misleading when he made them.

At the January 8, 2020 evidentiary hearing, the mediator testified "unequivocally" that Respondent never mentioned the possibility that Plaintiff would not attend the mediation in person. *Usherson* ECF No. 66, at 100-01. Judge Furman found this testimony credible in part because it was corroborated by Defendant's counsel's testimony as well as documentary evidence. *Usherson* ECF No. 68, at 30.

Judge Furman found Respondent's testimony—namely, that he requested and obtained the mediator's explicit consent for Plaintiff to appear at the mediation by telephone—to be "on its own terms, [ ] unworthy of belief." *Usherson* ECF No. 68, at 31. First, there was "absolutely no evidence to

31

corroborate it." *Id.* at 32. Second, Respondent's testimony "was in tension, if not direct conflict, with the representations of his own associate, Mr. Freeman." *Id.* at 17. Finally, Judge Furman explained that Respondent's testimony was "internally inconsistent, a function of his explanations shifting to suit the moment." *Id.* at 33.

In the complaint filed on July 10, 2019, Respondent alleged on behalf of Plaintiff that the photograph at issue (the "Photograph") "was registered with United States Copyright Office and was given Copyright Registration Number VAu 1-080-046" (the "046 Registration"). *Usherson* ECF No. 1, at ¶ 9. This allegation was false and misleading, and Respondent knew that it was false and misleading when he made it.

Respondent litigated the case even though he knew, or should have known, that the Photograph was not registered. Specifically, before the complaint was filed, Plaintiff provided to Respondent and his firm a CD-ROM containing all of the photographs that were registered in the 046 Registration. *Usherson* ECF No. 62, at 4. The Photograph was not among them. *Id.* at 4. Sometime after the complaint was filed, Plaintiff provided to Respondent and his firm a second CD-ROM containing an additional thirty photographs that had not yet been registered, including the Photograph. *Id.* at 4. Respondent's firm registered the Photograph on August 22, 2019, almost a month and a half after the lawsuit was filed. *Id.* at 4; ECF No. 68, at 40-41. Further, at the initial pretrial conference held on November 14, 2019, Defendant's counsel questioned whether the

Photograph had been timely registered, thereby raising the parties' awareness to the issue. *Usherson* ECF No. 50, at 17.

Respondent ultimately admitted that he had not investigated whether the Photograph was properly registered before filing the Complaint, called the false allegation a "technical pleading deficiency," and suggested that, but for the voluntary dismissal, he could have cured the problem by amending the Complaint. *Usherson* ECF No. 63, at ¶ 18; ECF No. 57, at 1-3. Respondent also claimed he did not know about the untimely registration and blamed his administrative staff instead. *Id.* at ¶¶ 4-9.

Judge Furman found these arguments to be unavailing and made in bad faith, noting that "in an effort to minimize his personal responsibility, Mr. Liebowitz himself has repeatedly tried to place blame for some of his misconduct on his firm." *Usherson* ECF No. 68, at 39, 61. On June 26, 2020, Judge Furman imposed a monetary sanction of $103,517.49, along with other non-monetary sanctions, on Respondent and his firm for repeatedly lying to the Court about compliance with a Court Order, violating at least six Court Orders, and preparing and filing a complaint with a false allegation, stating: "there may be no sanction short of disbarment that would stop Mr. Liebowitz from further misconduct." *Usherson* ECF No. 68, at 46.

## DISCUSSION

Rule 1.5(b)(5) of the Local Rules of the United States District Court for the Southern District of New York authorizes the Committee on Grievances to

discipline an attorney if, after notice and opportunity to respond, it is found by clear and convincing evidence that,

> [i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York. In interpreting the Code, in the absence of binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts, absent significant federal interests.

Respondent submitted a declaration, executed on December 28, 2021, wherein he admits to the Charges in the Statement of Charges and takes responsibility for having violated the Rules. Respondent consents to the Committee entering an order of suspension for a period of four years, *nunc pro tunc* to November 30, 2020, which is the effective date of the interim suspension, as a sanction for his misconduct. Taking into consideration all the circumstances, it is the Committee's opinion that a four-year suspension is an appropriate and suitable sanction to be imposed upon Respondent.

## DISPOSITION

The Committee on Grievances, having carefully considered Respondent's submissions in response to the Order to Show Cause, Statement of Charges and Amended Statement of Charges that were issued in this matter, finds that Respondent has raised no issues requiring a hearing. *See* S.D.N.Y. Local Civil Rule 1.5(d)(4). Based on the record and Respondent's own admissions, the Committee finds that Respondent acted in violation of Rules 3.3(a)(1), 3.4(c), 8.4(c), 8.4(d) and 8.4(h). Accordingly, the Committee sustains the Charges.

Pursuant to S.D.N.Y. Local Civil Rules 1.5(b)(5) and (c)(1), it is hereby ORDERED that Respondent is SUSPENDED, effective November 30, 2020, for a term of four years and until further order of this Court.

During the period of his suspension, Respondent may not share in any fee for legal services rendered by another attorney during the period of suspension but may be compensated on a quantum meruit basis for services rendered prior to the effective date of the suspension.

In accordance with Local Civil Rule 1.5(h)(3), Respondent is ORDERED to deliver a copy of this Order to the clerk of each federal, state, or territorial court, agency, and tribunal to which he is admitted to practice. Respondent is further ORDERED to deliver a copy of this Order to the clerk of each federal, state, or territorial court, agency, and tribunal to which he applies for admission (or reinstatement) to practice, including *pro hac vice* admission, simultaneously with his application.

The Clerk of Court is hereby directed to unseal the entire record of this matter.

Dated:    April 22, 2022
          New York, New York

Katherine Polk Failla
*Chair, Committee on Grievances of the*
*United States District Court for the*
*Southern District of New York*

35